### SIMONDS v. GEORGIA IRON & COAL CO.[*]

(Circuit Court, N. D. Georgia. July 9, 1904.)

**1. TRIAL—INSTRUCTIONS—CONFINEMENT OF RECOVERY TO PLEADINGS.**

In an action for injuries to a servant, plaintiff alleged certain acts of negligence, and later offered to amend by alleging that he was ordered into the place where he was injured, and went there under fear of punishment. The court rejected this amendment on the ground that it would introduce a new cause of action, and charged the jury that plaintiff could not recover by reason of being ordered into the place where he was injured, if he was injured from that cause alone, separate and apart from any other act of negligence. *Held*, that in so far as the case was affected by the offer to amend, and by evidence which might have been introduced as to the act of negligence charged in the amendment, there was, in view of the instructions, no error of which defendant could complain.

**2. MASTER AND SERVANT—INJURIES TO SERVANT—PLEADING—VARIANCE.**

In an action for injuries to a servant, evidence *held* to show that plaintiff was injured by the swinging of a scale board, as alleged in his petition, and not by reason of having been ordered under the scale board, as alleged in a rejected amendment.

**3. SAME—CONVICTS EMPLOYED BY LESSEE—QUESTION OF ACCIDENT.**

In an action by a convict for injuries sustained by him while in the service of a lessee of the state, where the whole evidence showed that the injury was caused by a known risk of the service, the question of accident was not in the case, and it was unnecessary for the court to charge thereon.

**4. SAME—ASSUMPTION OF RISK.**

A convict who is leased out by the state to an employer cannot recover for injuries which he sustains by having voluntarily placed himself in a position of danger, but, as he does not engage in the service of his own free will, he does not assume the risks visible in, and ordinarily incident to, the service, which a free man engaging therein would be charged with having assumed.

C. L. Pettigrew and George L. Bell, for plaintiff.
Rosser & Brandon, for defendant.

NEWMAN, District Judge.   The first question to be considered on this motion for a new trial is that raised by reason of an amendment offered by plaintiff's counsel and rejected by the court.   The plaintiff offered to amend by alleging that the plaintiff was ordered under the descending scale board, and went under it in fear of punishment, and was injured.   When the court rejected this amendment the plaintiff proceeded with the case, and went to the jury on the other grounds of negligence.   These were, as stated in the charge of the court:  First, in putting him to work in a dangerous place; second, in allowing the scale board used in hoisting materials from the pit to run down upon him negligently and without warning; third, in allowing the scale board to run at a dangerous rate of speed, and in a sidewise motion; and, fourth, in having no appliances sufficient to control the speed of the scale board.   It is claimed now that the plaintiff's testimony showed that the accident occurred as he sought to set up in the amendment, which was rejected, and consequently he ought not to recover.   It is claimed that the immediate cause of his injury, according to his own evidence and that of the witness Springfield, was his being ordered under the descending scale board, and going in in consequence of such orders.

The court instructed the jury upon this subject as follows:

"It is urged by defendant's counsel that the plaintiff seeks to recover here because he was ordered by the foreman, Brown, under the descending scale board, and was injured by reason of having been so ordered.  The court has held, in passing upon the pleadings in this case, that this would be a distinct and a new cause of action in this case, and that it could not be set up here as a distinct and affirmative ground for recovery.  The court so instructs you now that the plaintiff cannot recover by reason of being ordered by the foreman, Brown, under the descending scale board, if you believe he was injured from that cause only, and separate and apart from, and without reference to, the other grounds of negligence which have been referred to."

I think the case, so far as it was affected by this offer to amend, and by the evidence of the plaintiff and of Springfield as to the plaintiff having been ordered under the descending scale board, was fairly put before the jury by this instruction.   The case was in a somewhat peculiar and unusual situation, but I do not see how the defendant can complain of any injury to it by the direction given to the case in this respect.

¶ 4. Risks assumed by servant, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

An examination of the plaintiff's evidence fails to show what is contended for by the defendant's counsel on this branch of the case. This is an extract from the plaintiff's testimony:

"Q. You say you went back into the cut? Where was the scale board when you went back? A. It had swung off at the other end from where I was at work."

And this also:

"Q. Can you state how much work you did from the time you went back, until you saw the scale board on the other side? A. I did not do any. I stooped over to pick up my pick, and went to raise it up, when it struck me in the back. Q. What kind of a motion did that scale board have when you saw it on the other side? A. It swung over that way pretty fast. Q. Did it have any other motion at the same time? A. Not as I remember. It swung over that way. When Brown hollered like he did, I jumped off right in here. It was over at that end, and as it came back it struck me."

It will be seen from this statement of plaintff that at the time he went back to work the scaleboard was, as he expressed it, "at the other end of the pit." And this does not sustain the contention of counsel for defendant, as I understand his contention. A person would not be likely, even under the compulsion of fear of whipping, to go to certain injury, and possible death, by walking immediately under one of these descending scale boards, so that a fair view of the matter, and that indicated by the extract from the testimony, is that the plaintiff went back into the pit and started to go to work while the scale board was swinging on the other side of the pit, and it could not be told exactly where it would descend. Springfield's testimony, so far as it relates to this subject, is as follows:

"A. Well, sir, when that scale board come out it was at one end. I taken up the scale board, and these men that were picking where I would take up the scale board. I taken the scale board up, and brought it back, and gave signals to stop, and motioned it was going a little too fast; and, when it got about twelve feet below where I was going to let the scale board down, it stopped sudden, and that gave it a swing. I called out 'Watch out for Ella' (I had so much talking to do), and I waited until it got about halfway back. I gave the signal to drop it, and, as I gave the signal, Mr. Brown hollered out: 'By God! you all quit work. Wait until the captain comes, with the whip.' This man was standing to one side as I looked to see if the men was out of the way. John was about 8 feet closer than the others, and, as I gave the signal to let it down, the next I saw was a man's foot with a pick in his hand, and, as I seen that, I threw up my hand; and this man in the tower—hoisting man—he come to the door and said: 'Why in hell don't you stop it in the right place?' Q. What kind of a motion did that scale board have in coming down? A. As it come down it was swing backward and forward across the hole. Q. How far did it swing at that time? A. Sometimes it would not be swinging very much. Q. I mean at this time—at this particular time how far did it swing? A. It was swinging from about one end of the hole to the other—clear across the hole." And again: "Q. If there had not been any swinging there, and let down slowly, would it have hit John, in the position where he was? A. No, sir."

So that, even from Springfield's testimony, it appears that it was the swinging of the scale board that caused it to strike the plaintiff. It may be seriously doubted, in view of this evidence of the plaintiff and of Springfield, whether any instruction with reference to the

proposed amendment was proper. But even if it was proper, I think it was covered by the instructions as quoted above.

The next question in the case which ought to be mentioned is the claim of counsel for defendant that the court instructed the jury if the defendant was guilty of negligence in either of the four respects claimed by the plaintiff, and which have been referred to above, that the plaintiff was entitled to recover, unless he was himself guilty of contributory negligence. The particular thing with regard to this, as I understand it, is that there was no evidence either upon the subject of this being a dangerous place to work, or that the appliances used by defendant were not sufficient to control the speed of the scale board. I think an examination of the whole record will show that there was enough evidence to require the court to put the case before the jury on both grounds. The contention of the plaintiff was that this was a dangerous place to work, and he offered evidence as to its size, and how the men were engaged in working, and how these scale boards were raised, and also how the signals were given; and I did not think it was a case for the court to say that it was a safe place to work, but, rather, that it was a question for the jury. I think so now.

With reference to the appliances to control the speed of the descending scale boards, it is only necessary to refer to the testimony of Dr. Atkinson, without reference to the other testimony, to show that there was evidence which made it the duty of the court to submit the question to the jury.

The testimony of Joel Hurt and George Hurt on this subject was clear and forcible as to the character and sufficiency of the appliances for the purposes intended. But even with this strong testimony for the defendant, it was a question for the jury to determine.

The next question in the case arises from the claim of counsel for the defendant that the court did not instruct the jury that if the plaintiff's injuries were caused by an accident, pure and simple, without negligence on the part of any one, he could not recover. The court did, at the request of counsel for defendant, instruct the jury as follows:

"The burden is on John Simonds to show not only that he got hurt, but that he got hurt by reason of the negligence of the Georgia Iron & Coal Company. The mere fact that the accident occurred is not of itself, and in the absence of other circumstances, sufficient to show any negligence on the part of the Georgia Iron & Coal Company, nor any reason why there should be any recovery against it in this case."

Assuming that this does not cover the suggestion now made on this point, I do not believe that such an instruction was required under the facts of this case. The court instructed the jury, as was proper, as follows:

"Free persons, entering into a contract of service with an employer, take the risks of the dangers which are visible, and naturally an ordinarily incident to such service. This is not true of convicts engaged in a particular service, such as this question here. They engage in it without their consent, and without their free will being exercised in the matter. This does not mean, however, that a convict can carelessly and negligently place himself in a dangerous position, and then recover for injuries received in con-

sequence thereof. It is the duty of a convict, as well as of a free man in the same service, to exercise ordinary and reasonable care and diligence; and if such convict voluntarily and freely incurs unnecessary risks, and puts himself, of his own volition, in a position of danger, he cannot recover, any more than a free man, under like circumstances, in the same service."

I believe, in view of the place at which the plaintiff was put to work by the defendant company, the situation with reference to the descending scale boards, one of the dangers of this employment and this work was that those engaged in the pit might be struck by the descending scale board. The whole evidence seems to show this. The evidence showed that these convicts engaged in this work had been warned to be careful, and to look out for these descending scale boards. It shows that a person was kept on the side of the bank to give signals of the descent of the scale board, and it seems, if the signals were not given properly, or were not heard, or misunderstood, that those engaged in this work were liable to be struck by the descending scale board. So it is unnecessary to hold on this branch of the case that there was any particular negligence about this on the part of the company, but only that the necessity of using care to avoid these descending scale boards was one of the incidents of the service. It required observation and alertness on the part of those who engaged in this work to protect themselves. If so, it seems necessarily to have been a risk of the service, and, that being true, and if it was right to instruct the jury that the plaintiff did not assume the ordinary risks of the service, as it certainly was, then it would hardly be fair to state to the jury, if it was an accident, pure and simple, the plaintiff could not recover. If it was simply an accident, it was simply a risk of the service, under the undisputed facts of this case. Reflection about the matter has confirmed me in the opinion I entertained during the trial that the question of an "accident, pure and simple," is not in this case.

I think, therefore, that the law of this case was fairly stated to the jury, and it was then a question for the jury to determine upon the facts. They found that the plaintiff was entitled to recover, and fixed the amount of the recovery.

Counsel for defendant, in his brief filed on this motion, clearly and tersely states his position on this question, which is indicated by an extract as follows:

"It is true that the convict cannot select the particular place at which he is to work, nor the particular tool to be used. But the law, when it makes him a convict, takes the place of his will, and selects for him the class of place in which he shall work, and the class of tools which he shall use. This legal selection, instead of his will selection, is the penalty he pays for violation of the law. The free man takes voluntarily the risks incident to his occupation. The convict takes the risk as a part of his penalty for the law's violation. When the lessee hires a convict, he takes him just as he does a free man, so far as accidents incident to the business or concern. The lessee is responsible only for such wrong as he does the convict. That he must work in certain classes of places and at certain classes of business is the command of the state, and not that of the lessee. This being true, if he is hurt as a result of pure accident, the incident of the business that the state, not the lessee, forces upon him, then the lessee is not responsible. The law says: 'I have taken charge of this man. For the next year he must work

**at** mining. I will work him, or I will permit you to work him. I have already condemned him to the accidents that are incident to the business. With that you have nothing to do, from that you can't relieve him. But you must furnish a reasonably safe place, and tools of like safe character. I have not condemned him to work in unsafe mines, nor with unsafe tools; and, if you add to his sentence by forcing him to do so, you will be liable.' "

If this be the law, the instruction given by the court was erroneous, and the defendant was entitled to a different instruction. But I am wholly unable to agree with this view of the law. In my judgment, the law of the case is as it was given to the jury, and as stated herein.

One of the grounds in the motion for a new trial is that the court erred in instructing the jury as to the measure of damages. I do not understand it to be seriously urged that the verdict was so excessive as to require the court to interfere on that ground. The extent to which the plaintiff was injured was so apparent that there could hardly be any claim that the verdict was excessive, if the plaintiff was entitled to recover at all. The question of negligence and contributory negligence was for the jury, and that they have determined.

Believing as I do that the law was fairly presented to the jury, I have no right to interfere with its verdict. Consequently the motion to set aside the verdict and grant a new trial is denied.